EXCELSIOR PICTURES CORP., a New York corporation, Plaintiff,

v.

CITY OF CHICAGO, ILLINOIS, a municipal corporation, Richard J. Daley and Timothy J. O'Connor, Defendants.

No. 59 C 1368.

United States District Court
N. D. Illinois, E. D.
March 31, 1960.

Goldberg, Devoe, Shadur & Mikva,. Chicago, Ill., for plaintiff.

John C. Melaniphy, Corporation Counsel, Chicago, Ill., for defendants.

MINER, District Judge.

The Complaint in this case was filed on August 24, 1959, by Excelsior Pictures Corporation, naming as defendants the City of Chicago, Mayor Richard J. Daley

and Police Commissioner Timothy J. O'Connor. The facts are not in dispute and a Stipulation of Facts has been filed by the parties setting forth certain of the facts which the parties agree are to be accepted as true for purposes of this proceeding. These facts are as follows:

"1. Plaintiff has the exclusive right to distribute, to license for exhibition and to exhibit in the City of Chicago a certain photoplay or motion picture entitled 'Garden of Eden,' a print of which motion picture is attached to the Complaint filed herein, marked Exhibit A and made a part of said Complaint.

"2. That pursuant to the provisions of a certain municipal ordinance enacted by the City of Chicago, being Sections 155-1 to 155-7 of the Municipal Code of Chicago, a copy of which ordinance is attached to the Complaint filed herein, marked Exhibit B and made a part of said Complaint, plaintiff, on May 15, 1959, applied to defendant O'Connor for a permit to exhibit the motion picture 'Garden of Eden.' Defendant O'Connor on May 28, 1959, through his duly authorized agent, notified plaintiff that he would not issue such a permit for the showing of said motion picture in the City of Chicago, on the ground that said motion picture was obscene. Pursuant to the municipal ordinance above referred to, plaintiff thereupon, on June 10, 1959, appealed the decision of defendant O'Connor to defendant Daley. On July 31, 1959, defendant Daley, through his duly authorized agent, denied the appeal of plaintiff from the order of defendant O'Connor and refused to issue to plaintiff a permit to exhibit the film 'Garden of Eden' in the City of Chicago upon the ground that said motion picture was obscene.

"3. As a result of the foregoing actions of the defendants in denying plaintiff a permit to exhibit said film and as a result of the requirements of the municipal ordinance above referred to that a permit must be obtained prior to the exhibition of any motion picture film in the City of Chicago, plaintiff is forbidden and prohibited from exhibiting said motion picture."

It is not disputed that the motion picture in issue has been viewed by audiences in numerous public theatres throughout the United States and in foreign lands. Up to the end of 1955, it had been viewed by approximately 1,600,000 persons in the United States, Alaska and Hawaiian Islands. Among the cities in the United States in which it has been so exhibited are San Francisco and Los Angeles, California; Washington, D. C.; and, by uncontroverted representation of counsel in open court, New York City, New York.

*The Obscenity Issue*

The Court has been first presented with the question of whether the film is immoral or obscene within the meaning of the provisions of Sections 155-1 through 155-7 of the Municipal Code of the City of Chicago. Section 155-4 sets forth the following criteria concerning the grounds for denial of a permit to exhibit a motion picture film:

"If a picture or series of pictures, for the showing or exhibition of which an application for a permit is made, is immoral or obscene, or portrays depravity, criminality, or lack of virtue of a class of citizens of any race, color, creed, or religion and exposes them to contempt, derision, or obloquy, or tends to produce a breach of the peace or riots, or purports to represent any hanging, lynching or burning of a human being, it shall be the duty of the commissioner of police to refuse such permit; otherwise it shall be his duty to grant such permit."

■ This provision of the Municipal Code of Chicago has been construed by the Supreme Court of Illinois in the case of American Civil Liberties Union v. City of Chicago, 1955, 3 Ill.2d 334, 121 N.E.2d 585. It is, of course, elementary

that the construction placed upon a state statute or municipal ordinance by the highest Appellate Court of that state is binding upon the courts of the United States.

In the American Civil Liberties Union case, Mr. Justice Walter Schaefer, then Chief Justice, defined the word "obscene", as it is used in the ordinance, as follows (3 Ill.2d at page 347, 121 N.E.2d at page 592):

> "[A] motion picture is obscene within the meaning of the ordinance if, when considered as a whole, its calculated purpose or dominant effect is substantially to arouse sexual desires, and if the probability of this effect is so great as to outweigh whatever artistic or other merits the film may possess. In making this determination, the film must be tested with reference to its effect upon the normal, average person."

That opinion expressly characterized that term as being "no broader and no less definite than as used in the postal laws, under which 'prior restraint' has long been exercised through the exclusion of obscene matter from the mails" (Ibid.). Further, that decision characterizes the term "immoral" found in the ordinance as "little more than a synonym for 'obscene'" (Ibid., 3 Ill.2d at page 348, 121 N.E.2d at page 592).

This definition of the terms "obscene" and "immoral" is substantially identical with the definition by the United States Supreme Court in Roth v. United States, 1957, 354 U.S. 476, at page 487, 77 S.Ct. 1304, at page 1310, 1 L.Ed.2d 1498, rehearing denied Alberts v. State of Cal., 355 U.S. 852, 78 S.Ct. 8, 2 L.Ed.2d 60, where Mr. Justice Brennan, for the majority, declared:

> "Obscene material is material which deals with sex in a manner appealing to prurient interest. The portrayal of sex, e.g., in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press. Sex, a great and mysterious motive force in human life, has indisputably been a subject of absorbing interest to mankind through the ages; it is one of the vital problems of human interest and public concern."

■ In its function of determining the facts of this case as well as the law, the Court has viewed the film in its entirety and finds that the film does, as plaintiff contends, seek to portray nudism as a healthful and happy way of life. The picture does not expose the private parts of the adult characters. Considered as a whole, its "calculated purpose or dominant effect" is not substantially to arouse sexual desires in "the normal average person." It is not "immoral" or "obscene" within the meaning of the Chicago ordinance.

■ The Court does not by its ruling purport to encourage the propagandization of nudism in this community. This is not the type of motion picture which the Court, in its personal capacity, would recommend the public to view. But it is not the Court's function to determine legal issues by applying as standards its personal inclinations or its individual proclivities. The Court must apply the definitions which the Illinois Supreme Court has englossed upon the ordinance and which the United States Supreme Court has sustained in like cases.

■■ The mere fact that nudism is not an accepted way of life among the vast majority of persons in the Chicago community, or, indeed, among Americans as a whole, cannot and has not been considered by the Court as controlling. In Kingsley International Pictures Corp. v. Regents of University of State of New York, 1959, 360 U.S. 684, 79 S.Ct. 1362, 1364, 3 L.Ed.2d 1512, the Supreme Court of the United States upheld the exhibition of "Lady Chatterley's Lover", a motion picture which portrays adultery. It examined the constitutionality of that

part of a New York statute [1] which that state's highest court had construed as authorizing the denial of a license to exhibit a motion picture "because its subject matter is adultery presented as being right and desirable for certain people under certain circumstances." [2] The Supreme Court there decided [3] that, insofar as the New York statute prohibited the issuance of a license to exhibit "Lady Chatterley's Lover" *on that ground*,[4] it was unconstitutional. The "opinion of the Court"[5] declared (360 U.S. at page 688, 79 S.Ct. at page 1365):

"It is contended that the State's action was justified because the motion picture attractively portrays a relationship which is contrary to the moral standards, the religious precepts, and the legal code of its citizenry. This argument misconceives what it is that the Constitution protects. *Its guarantee is not confined to the expression of ideas that are conventional or shared by a majority. It protects advocacy of the opinion that adultery may sometimes be proper, no less than advocacy of socialism or the single tax.* And in the realm of ideas it protects expression which is eloquent no less than that which is unconvincing." (Emphasis supplied.)

The freedoms guaranteed by the First and the Fourteenth Amendments to the United States Constitution are not wholly

---

1. McKinney's N.Y.Laws, 1953, Education Law, §§ 122, 122–a, which state in part that a license shall issue "unless such film or a part thereof is obscene, indecent, immoral, inhuman, sacrilegious, or is of such a character that its exhibition would tend to corrupt morals or incite to crime. * * *" (§ 122), and that "the term 'immoral' and the phrase 'of such a character that its exhibition would tend to corrupt morals' shall denote a motion picture film or part thereof, the dominant purpose or effect of which is erotic or pornographic; or which portrays acts of sexual immorality, perversion, or lewdness, or which expressly or impliedly presents such acts as desirable, acceptable or proper patterns of behavior" (§ 122–a).

The only part of the statute considered by the Supreme Court is that part of those sections which required denial of a license to motion pictures "which are immoral in that they portray 'acts of sexual immorality * * * as desirable, acceptable or proper patterns of behavior.' "

2. 4 N.Y.2d 349, 175 N.Y.S.2d 39, 151 N.E. 2d 197.

3. Mr. Justice Stewart delivered the "opinion of the Court"; Mr. Justice Black concurred in the "opinion of the Court" and in the "judgment" but added his opinion that "prior censorship of moving pictures like prior censorship of newspapers and books violates the First and Fourteenth Amendments"; Mr. Justice Frankfurter concurred in the "result" but not in the "opinion of the Court," because the New York court applied the statute "to a picture to which it cannot be applied without invading the area of constitutionally free expression"; Mr. Justice Douglas, with whom Mr. Justice Black joined, concurred in the "opinion of the Court" but added his opinion that "censorship of movies is unconstitutional, since it is a form of 'previous restraint' "; Mr. Justice Clark concurred in the "result" because of the "obscurity of the standard" in the New York statute, which standard its highest court had defined as "the portrayal of 'acts of sexual immorality * * as desirable, acceptable or proper patterns of behavior' ", thus placing "more emphasis on what the film teaches than on what it depicts"; Mr. Justice Harlan, with whom Mr. Justice Frankfurter and Mr. Justice Whittaker joined, concurred in the "result" but not in the "opinion of the Court" "because I believe the New York statute was unconstitutionally applied in this instance".

4. The "opinion of the Court" footnoted a statement in the brief of counsel for the Regents that "The full definition is not before this Court—only these parts of the definition as cited—and any debate as to whether other parts of the definition are a proper standard has no bearing in this case."

5. The "opinion of the Court" is the opinion of (a) Mr. Justice Stewart, Mr. Justice Black and Mr. Justice Douglas, as indicated in fn. 3 above; and (b) Chief Justice Warren and Mr. Justice Brennan, there being no indication that they had no part in the proceedings and decision. Because of his stand, it could be argued that Mr. Justice Clark is an implicit subscriber to the "opinion of the Court."

unconditional or absolute, and they may not be abused. However, they are not conditioned upon, and may not be construed to have been abused by, the presence or absence of majority endorsement of the views or ideas for the promulgation of which freedom is claimed or sanctions are sought.

This Court further finds that nudity *per se* is not "immoral" or "obscene" within the meaning of the ordinance. There is hardly an art museum or gallery to which one can go where completely nude statues and pictures are not on constant and prominent exhibition. Many popular books and magazines, far too numerous to list, frequently publish human nudity without offending the law. Certainly, if the advocacy, under certain circumstances, of adultery, which is contrary to moral standards and religious precepts, is protected by our Constitution, then the portrayal, by partial nudity, of nudism as a healthy and happy way of life should be accorded like protection.

Nudism may be unappealing and unattractive to some people. It may be repulsive and vulgar to others. But that does not brand it as "obscene" or "immoral". Whether or not it appeals to or repels an individual's sensitivities is irrelevant when the Court is bound to apply definitions of "obscene" and "immoral" which do not incorporate such subjective standards. This is not to say, however, that nude statues, pictures and representations may not under certain circumstances and by different portrayals be characterized as "obscene".

It is the conclusion of this Court that, because the motion picture "Garden of Eden" may not be denied a license on the ground that it is "obscene" or "immoral" within the meaning of the Chicago ordinance, the denial of that license by the city authorities on that ground (1) constituted a denial of plaintiff's rights to freedom of speech and press guaranteed by the Fourteenth Amendment to the Constitution of the United States to advocate nudism as a healthful and happy way of life, and (2) represents the application of the said ordinance "to a picture to which it cannot be applied without invading the area of constitutionally free expression." [6]

At the Court's suggestion, plaintiff has agreed to limit and restrict the exhibition of the picture to adults only, and not to publicize such exhibition in any manner or form as being authorized by the Court, and it is so ordered.

This memorandum shall stand as the Court's Findings of Fact and Conclusions of Law. Counsel for plaintiff will prepare and submit to the Court a form of Order directing defendants to issue the license.

6. Mr. Justice Frankfurter, concurring in Kingsley International Pictures Corp. v. Regents of University of State of New York, 1959, 360 U.S. 684, at page 695, 79 S.Ct. 1362, at page 1369, 3 L.Ed.2d 1512.