No. 50,901

STATE OF KANSAS, *Appellant,* v. THE GREAT AMERICAN THEATRE CO. d/b/a THE GREAT AMERICAN THEATRE and GEORGE W. CLARK, *Appellees.*

(608 P.2d 951)

Opinion filed April 5, 1980.

*Beverly Dempsey,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Stephen E. Robison,* assistant district attorney, were with her on the brief for the appellants.

No appearance by the appellees.

The opinion of the court was delivered by

HERD, J.: This appeal is taken upon a question reserved by the State, pursuant to K.S.A. 1978 Supp. 22-3602(*b*)(3). At trial, a jury was called upon to determine whether the film "French Blue" and the cartoon "Sine" were obscene, pursuant to K.S.A. 1978 Supp. 21-4301(2)(*a*). The jury found the defendant guilty of promoting obscenity as to the cartoon and was unable to reach a verdict regarding the film. The State later dismissed charges regarding the film.

The question before this court involves the instructions given at trial. The definition of obscene, pursuant to K.S.A. 1978 Supp. 21-4301(2)(*a*), is:

"Any material or performance is 'obscene' if the average person applying contemporary community standards would find that such material or performance, taken as a whole, appeals to the prurient interest; that the material or performance has patently offensive representations or descriptions of ultimate sexual acts, normal or perverted; and that the material or performance, taken as a whole, lacks serious literary, educational, artistic, political or scientific value."

The State disputes the instruction given defining the element of prurient interest. The following instruction, an adaptation of PIK Crim. 65.03, was given:

"You must determine whether the film you have seen appeals to a prurient interest in sex. A prurient interest in sex is not the same as a candid, wholesome, or healthy interest in sex. Material does not appeal to the prurient interest just because it deals with sex or shows nude bodies. Prurient interest is an unhealthy, unwholesome, morbid, degrading, and shameful interest in sex, a leering or

longing interest in sex. An appeal to the prurient interest is an appeal to sexual desire."

The State requested, and the trial court refused, the following instruction: "An appeal to the prurient interest in sex is defined as an appeal to sexual desire." The State contends recent developments in the law of obscenity have changed the definition of prurient interest or prurient appeal to reflect the requested instruction. It should be noted this appeal is concerned only with the phrase "appeal to the prurient interest." The State does not question the remaining elements in the modern test of obscenity, *e.g.,* "patent offensiveness," "contemporary community standards," or "serious literary, artistic, political or scientific value." *Miller v. California,* 413 U.S. 15, 24, 37 L.Ed.2d 419, 93 S.Ct. 2607 (1973).

A brief history of the law of obscenity is essential to a discussion of the issues raised in this case. The courts and legislatures have been struggling with the regulation of obscenity for a long period of time. The First Amendment to the United States Constitution provides that Congress shall make no law abridging the freedom of speech or press. The Fourteenth Amendment applied it to the states. In *Roth v. United States,* 354 U.S. 476, 1 L.Ed.2d 1498, 77 S.Ct. 1304 (1957), a majority of the court held that obscenity is an exception to First Amendment protection. The states are left with the right to regulate obscenity. The difficulty lies in defining the term succinctly enough to prevent invading areas of thought and ideas having redeeming social importance, the dissemination of which is essential to the functioning of a free society. We, therefore, seek a narrow definition.

The Supreme Court in *Roth* defined obscenity in 1957, and in 1966 attempted to refine the definition in *Memoirs v. Massachusetts,* 383 U.S. 413, 16 L.Ed.2d 1, 86 S.Ct. 975 (1966). Following these two decisions the Kansas Legislature adopted the guidelines set forth in *Roth* and *Memoirs.* In 1973 the Supreme Court again spoke, in *Miller v. California,* and revised its previous definition of obscenity. This court construed the then existing statute, K.S.A. 21-4301(2)(*a*)(*b*)(*c*) and (3), in *State v. Motion Picture Entitled "The Bet",* 219 Kan. 64, 547 P.2d 760 (1976). Thereafter, the Legislature passed a new obscenity statute, K.S.A. 1978 Supp. 21-4301, which is the act before us at this time.

Let us now turn to a detailed analysis of the cases which have

defined the term "prurient." In *Roth v. United States,* 354 U.S. at 489, the following test for obscenity was adopted:

"[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

Prurient interest was defined in *Roth* at 487, n. 20:

"[M]aterial having a tendency to excite lustful thoughts. Webster's New International Dictionary (Unabridged, 2d ed., 1949) defines *prurient,* in pertinent part, as follows:

" '. . . longing, uneasy with desire or longing; of persons having . . . morbid, or lascivious longings; of desire, curiosity, or propensity, lewd. . . .'

"*Pruriency* is defined, in pertinent part, as follows:

" '. . . Quality of being prurient; lascivious desire or thought. . . .'

"See also *Mutual Film Corp. v. Industrial Comm'n,* 236 U.S. 230, 242 [59 L.Ed. 552, 559, 35 S.Ct. 387, Ann. Cas. 1916C 296], where this Court said as to motion pictures: '. . . They take their attraction from the general interest, eager and wholesome it may be, in their subjects, but a *prurient interest may be excited and appealed to.* . . .' (Emphasis added.)

"We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I., Model Penal Code, § 207.10(2) (Tent Draft No. 6, 1957), *viz.:*

" '. . . A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. . . .' See Comment, *id.,* at 10, and the discussion at page 29 *et seq.*"

Appellant argues the definitions within footnote 20 are contradictory and contends the phrase "tendency to excite lustful thoughts" supports its position that an appeal to the prurient interest is an appeal to sexual desire. Appellant also argues the authors of the Model Penal Code distinguished between "lustful thoughts" and "prurient interest." Model Penal Code § 207.10, Comments, p. 10 (Tent. Draft No. 6, 1957) states:

"We reject the prevailing test of tendency to arouse lustful thoughts or desires because it is unrealistically broad for a society that plainly tolerates a great deal of erotic interest in literature, advertising, and art, and because regulation of thought or desire, unconnected with overt misbehavior, raises the most acute constitutional as well as practical difficulties."

The Supreme Court, however, found no differences between the meaning of obscenity in prior case law and the definition set forth in the Code. See *Roth v. United States,* 354 U.S. at 487, n. 20. The "case law" referred to in footnote 20 appears to be listed in footnote 26 at page 489. Each of the cases in footnote 26 defined

obscenity in a manner the Supreme Court considered consistent with its interpretation of prurient interest. Those cases and the phrases reflecting their definitions of obscenity are compiled and set forth below.

*Walker v. Popenoe,* 149 F.2d 511, 512 (D.C. Cir. 1945):

> "The standard must be the likelihood that the work will so much arouse the salacity of the reader to whom it is sent as to outweigh any literary, scientific or other merits it may have."

Accord, *United States v. Levine,* 83 F.2d 156 (2d Cir. 1936).

*Parmelee v. United States,* 113 F.2d 729, 736-737 (D.C. Cir. 1940):

> "The statute involved in the present case was interpreted in *United States v. One Book Entitled Ulysses,* and the decision in that case is equally applicable here. 'It is settled,' says the court in the *Ulysses* case, 'that works of physiology, medicine, science, and sex instruction are not within the statute, though to some extent and among some persons they may tend to promote lustful thoughts.' It should be equally true of works of sociology, as of physiology, medicine and other sciences—to say nothing of general literature and the arts—that 'where the presentation, when viewed objectively, is sincere, and the erotic matter is not introduced to promote lust and does not furnish the dominant note of the publication,' the same immunity should apply.
> ". . . The determining question is, in each case, whether a publication, taken as a whole, has a libidinous effect."

In *United States v. Dennett,* 39 F.2d 564, 568 (2d Cir. 1930), the court used some confusing language regarding arousal of sexual impulses and lustful thoughts, but concluded that:

> "[T]he test most frequently laid down seems to have been whether it would tend to deprave the morals of those into whose hands the publication might fall by suggesting lewd thoughts and exciting sensual desires."

*Khan v. Leo Feist, Inc.,* 70 F. Supp. 450, 458 (S.D.N.Y. 1947):

> " 'The question in each case is whether a publication taken as a whole has libidinous effect.' "

*Amer. Civil Liberties Union v. Chicago,* 3 Ill. 2d 334, 347, 121 N.E.2d 585 (1954):

> "We hold, therefore, that a motion picture is obscene . . . if, when considered as a whole, its calculated purpose or dominant effect is substantially to arouse sexual desires, and if the probability of this effect is so great as to outweigh whatever artistic or other merits the film may possess."

*Commonwealth v. Isenstadt,* 318 Mass. 543, 549-550, 62 N.E.2d 840 (1945):

"A book is 'obscene, indecent or impure' within the statutory prohibition if it has a substantial tendency to deprave or corrupt its readers by inciting lascivious thoughts or arousing lustful desire."

*State v. Becker,* 364 Mo. 1079, 1084-1085, 272 S.W.2d 283 (1954):

"After applying the required tests all the members of this Court have concluded that the contents of these publications tend to incite lascivious thoughts, arouse lustful desire, encourage breaches of the law, and promote and encourage commission of crime, law violation and moral decay."

At pages 1086-1087 the court went on to find the synonomous terms of indecent, immoral and scandalous, used in the statute with obscene, lewd, licentious and lascivious, "are not words of hidden or obscure or uncertain meaning." They are not "technical terms of the law."

"The word 'indecent' is a common word of common understanding. It has been defined to mean unfit to be seen or heard; immodest; gross; obscene; offending against modesty and less than immodest; that which would arouse lewd or lascivious thoughts in the susceptible. [Citations omitted.] The word 'immoral' is likewise a word of common understanding. It means hostile to the welfare of the general public; morally evil, impure, vicious or dissolute; licentious misconduct. [Citations omitted.] The word 'scandalous' as used in the statute in connection with the words 'obscene, lewd, licentious, lascivious, immoral' means shocking to decency or propriety, offensive, disreputable. Webster gives as synonyms of 'scandalous,' the words detestable, base, vile, shameful."

*Adams Theatre Co. v. Keenan,* 12 N.J. 267, 272, 96 A.2d 519 (1953):

"The question is whether the dominant note of the presentation is erotic allurement 'tending to excite lustful and lecherous desire,' dirt for dirt's sake only, smut and inartistic filth, with no evident purpose but 'to counsel or invite to vice or voluptuousness.' "

*Commonwealth v. Feigenbaum et al.,* 166 Pa. Super. Ct. 120, 122, 70 A.2d 389 (1950):

"[Obscene works] have the effect of inciting to lewdness, or of inciting to any sexual crime, or that they are sexually impure and pornographic, i.e. 'dirt for dirt's sake.' "

*Roth v. Goldman,* 172 F.2d 788, 792 (2d Cir. 1949):

"I think that no sane man thinks socially dangerous the arousing of normal sexual desires. Consequently, if reading obscene books has merely that consequence, Congress, it would seem, can constitutionally no more suppress such books than it can prevent the mailing of many other objects, such as

perfumes, for example, which notoriously produce that result. But the constitutional power to suppress obscene publications might well exist if there were ample reason to believe that reading them conduces to socially harmful sexual conduct on the part of normal human beings."

The courts stated a work is obscene if it has "socially undesirable effects on normal readers." *Roth v. Goldman* at 795.

In *Bantam Books, Inc. v. Melko*, 25 N.J. Super 292, 96 A.2d 47 (1953), the court discussed a variety of cases in different jurisdictions and appeared to adopt the test set forth in *United States v. One Book Entitled Ulysses*, 72 F.2d 705 (2d Cir. 1934), and *United States v. Levine*, 83 F.2d 156.

It is clear to this court that this compilation of cases reflects a definition of prurient interest that goes far beyond a mere arousal of sexual desire. The terminology alone used in many of the cases obviously portends a special meaning: "salacious," "lewd," "libidinous," tending to "deprave morals," "incite lascivious thoughts," "arouse lustful or lecherous desire." In short, "dirt for dirt's sake."

Appellant also discusses a myriad of state and federal cases following *Roth v. United States* that attempt to apply the obscenity test. We will not attempt to discuss all of the cases or resolve these many applications of what would appear to be contradictory definitions of prurient interest. The definitions range from those apparently concerned with arousal of sexual desires (*Excelsior Pictures Corp. v. City of Chicago, Illinois*, 182 F. Supp. 400, 403 [N.D. Ill. 1960]) to:

"[M]aterial which excites an unwholesome or unhealthy interest in sex; . . . material which portrays sex with a looselipped, sensuous leer.
.  .  .  .  .
". . . It is apparent that the magazine is published only for the cheapest of sensationalism and for the 'commercial exploitations of the morbid and shameful craving for materials with prurient effect.' " *Flying Eagle Publications, Inc. v. United States*, 273 F.2d 799, 803, 804 (1st Cir. 1960).

"[And material that is] disgusting, really lewd, shameful, or excites morbid interest in sex." *Eastman Kodak Company v. Hendricks*, 262 F.2d 392, 397 (9th Cir. 1958).

In *United States v. 35 MM. Motion Picture Film, Etc.*, 432 F.2d 705, 711, 712 (2d Cir. 1970), the court analyzed the term "prurient interest" as defined by *Roth v. United States.* The court concluded

"that the Supreme Court has never intended to brand as 'obscene' representations

of sexual matters which do not import a debasing, 'shameful or morbid' quality into the expression or depiction of human sexuality. To conclude otherwise would be to suggest that the human body and its functions are in themselves somehow 'dirty' or unspeakably offensive. There is no logic in such a position, and we reject it."

The court also noted:

"If the arousal of sexual appetite is equated with an appeal to 'prurient interest,' it might be necessary to hale into court our leading couturiers, perfumers, and manufacturers of soft drinks, soap suds and automobiles."

The court concluded:

"Since presentation of the sexual matter in this film is not characterized by the forbidden 'leer of the sensualist,' (*Ginzburg v. United States,* 383 U.S. 463, 468, 86 S.Ct. 942, 16 L.Ed.2d 31 [1966]), we do not believe the film as a whole can be considered an appeal to prurient interest."

Appellant contends later U.S. Supreme Court cases indicate the Court has retreated from its definition of prurient interest first expressed in *Roth v. United States.* The State contends when the court added the element of patent offensiveness to the test for obscenity (*Manual Enterprises v. Day,* 370 U.S. 478, 8 L.Ed.2d 639, 82 S.Ct. 1432 [1962]), it changed the test to mean that the manner of appealing to prurient interest must be a patently offensive manner. Although the two tests operate closely with one another, we do not find the court has clearly altered the definition of prurient interest in this manner. Appellant contends later cases, particularly *Ginzburg v. United States,* 383 U.S. 463, 16 L.Ed.2d 31, 86 S.Ct. 942 (1966), and *Mishkin v. New York,* 383 U.S. 502, 16 L.Ed.2d 56, 86 S.Ct. 958 (1966), clearly indicate the definition of prurient interest was evolving to merely an arousal of sexual desire. We have examined those cases and find no conclusive evidence the court intended the element of prurient interest to be solely an appeal to sexual desire. Admittedly the cases do not provide clear-cut guidelines for future precedent regarding prurient appeal, but neither do they eradicate the former test enunciated by the court.

We also reject appellant's reliance on *Cohen v. California,* 403 U.S. 15, 29 L.Ed.2d 284, 91 S.Ct. 1780 (1971), and *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 45 L.Ed.2d 125, 95 S.Ct. 2268 (1975). *Cohen* did not deal directly with obscenity and the court's reference to *Cohen* in *Erznoznik* does not involve the element of prurient interest. See *Erznoznik v. City of Jacksonville,* 422 U.S. at 213, n. 10.

Appellant further contends later cases attempting to apply the standards enunciated in *Miller v. California* dwell more on the definition of patent offensiveness than on an appeal to prurient interest. Thus, the State concludes the element of prurient interest has diminished in importance and it may now be defined as an appeal to sexual desire. Appellant argues this definition used in conjunction with state standards of patent offensiveness results in the modern test of obscenity. We agree that since the court's pronouncement in *Roth v. United States,* the test for obscenity has evolved away from the *sole* standard of an appeal to prurient interest. The test has not, however, abandoned the element of prurient interest.

"[The modern test is] (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, [citation omitted]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller v. California,* 413 U.S. at 24.

This test still embodies the equally important element of prurient interest. U.S. Supreme Court opinions since *Roth v. United States* have, at times, been vague in their discussion of prurient interest and have assumed that "the term 'prurient interest,' as used as an element of the concept of obscenity, is self-explanatory." Annot., 41 L.Ed.2d 1257, 1274. Nonetheless, from our examination of the obscenity cases from and including *Roth v. United States,* we find that the overall definition of prurient interest has not altered from that expressed in *Roth.* Regardless of contradictory aspects of the definition, it is clear the court meant something more than merely an appeal to sexual desires when it discussed the element of prurient appeal. Modern society tolerates a great deal of eroticism in art, literature, sports and advertising, all of which is capable of promoting sexual desires. The use of appellant's instruction would subject most merchants, television stations and mail order houses to prosecution for promoting obscenity. Any sexually attractive advertisement could be judged patently offensive with no redeeming social values by local community standards in a conservative community by the use of appellant's definition. Such a definition would do violence to First Amendment protections and is unacceptable. As a final thought, we note the Kansas Legislature had before it the case law definitions of obscenity

presented herein and chose to use the term "prurient interest" rather than simply "sexual desire" in its definition of obscene. We are constrained to abide by that decision. We, therefore, decline to accept appellant's definition of prurient interest. The instruction given by the trial court was correct. The appeal is denied.

MILLER, J., dissenting: I disagree with the conclusions of the majority and therefore respectfully dissent.

We are concerned here with jury instructions defining "obscenity" in terms of "prurient interest." The prosecution brings the matter before us, seeking a clearer definition. The trial court, the PIK Committee, and this court have followed the lead of the United States Supreme Court in using the word "prurient" in defining "obscene."

The trial court gave the following instructions which were tailored to this case:

"INSTRUCTION NO. 3

"It is for you to determine whether the motion picture films you have seen are obscene. You must disregard any previous notions you may have had and apply the legal definition of obscenity. In order for the films to be legally obscene, all of the following must exist:

"1. The average person, applying contemporary community standards, would find the film, taken as a whole, appeals to the prurient interest in sex;

"2. The film has patently offensive representations of ultimate sexual acts, normal or perverted; and

"3. The film, taken as a whole, lacks serious literary, educational, artistic, political or scientific value.
You should consider each film separately.
I will explain the terms used in this definition of obscenity.

"INSTRUCTION NO. 4

"You must determine whether the film you have seen appeals to a prurient interest in sex. A prurient interest in sex is not the same as a candid, wholesome, or healthy interest in sex. Material does not appeal to the prurient interest just because it deals with sex or shows nude bodies. Prurient interest is an unhealthy, unwholesome, morbid, degrading, and shameful interest in sex, a leering or longing interest in sex. An appeal to the prurient interest is an appeal to sexual desire.

"INSTRUCTION NO. 5

"In determining whether the film you have seen appeals to a prurient interest in sex, you must determine whether the average person in the community would find that the film has such appeal. People have different views regarding the propriety of certain material. Obscenity is not, however, a matter of individual taste. You must judge how the average person in the community would view this film.

"When I speak of the average person, I mean the average adult in the community. We know that there are individuals in the community who are especially

susceptible or especially sensitive to materials dealing with sex, and that there are those who are unusually sophisticated regarding sexual matters. But you are not to consider the views of these people, or the effects that this film would have on them. You are to consider the appeal of this film to the average person, the person with average sex instincts and with average attitudes about sexual matters, in determining whether or not this film appeals to the prurient interest in sex.

"INSTRUCTION NO. 6

"In making your determination whether the average person would find that this film appeals to the prurient interest, you must consider the film as a whole, in its entirety. The fact that one portion or scene of the film may have some appeal to the prurient interest is not sufficient. The appeal to the prurient interest must be the main appeal of the film. The effect of isolated excerpts cannot be part of your consideration. In determining whether an appeal to the prurient interest in sex is the main appeal of the film, you should consider the intended effect of the film on the intended and probable audience of the film.

"INSTRUCTION NO. 7

"Whether this film, taken as a whole, appeals to the prurient interest in sex, and whether it portrays ultimate sexual acts in a patently offensive way, must be measured in terms of the contemporary community standards of Sedgwick County, Kansas. You must determine whether this film violates those standards; in other words, whether the film goes substantially beyond the limits of candor that the community deems acceptable in the representation of sexual conduct.

"Remember that the standards to be applied are contemporary community standards. Standards change over time, and you may find acceptable materials which were unacceptable in the past, or you may find unacceptable material which might be acceptable in the future.

"Contemporary community standards are determined by what the community as a whole in fact finds acceptable. The community as a whole is society at large, and not particular people or particular groups. What some people think the community ought or ought not to accept is not important. It is what people in general, the community as a whole, accept that is determinative.

"In determining what the contemporary community standards of Sedgwick County are, you may consider your knowledge of what is acceptable in the community, as well as the evidence in this case. Merely because something is available in the community does not mean that it is acceptable by the community.

"INSTRUCTION NO. 8

"In order to be obscene, the film you have seen must represent ultimate sexual acts, normal or perverted, in a patently offensive way, that is, it must do so in a way that offends the contemporary community standards of Sedgwick County. Not all representations of ultimate sexual acts are patently offensive. You must find that the representation of sexual acts goes substantially beyond customary limits of candor for it to be patently offensive.

"INSTRUCTION NO. 9

"In order for you to find that this film is obscene, you must also find that, taken as a whole, it lacks serious literary, artistic, educational, political, or scientific value. If the film has such value, it is not obscene even if it appeals to the prurient interest in sex, and even if it represents ultimate sexual acts in a patently offensive way.

"INSTRUCTION NO. 10

"In order to find the defendants guilty, you must find that they knowingly exhibited the film you have seen. The defendants' acts had to be intentional and purposeful, and not accidental. It is not necessary that the defendants be shown to have actually seen the film, but only that the defendants knew or reasonably should have known the nature and character of the film. It does not matter that the defendants may have believed the film not to be obscene.

"If you find that the defendants promoted the film to emphasize its prurient appeal or sexually provocative aspect, you may presume that the defendants exhibited the film knowingly, but you are not required to do so if you are persuaded by the evidence that the contrary is true."

The word "prurient" appears at least a dozen times in the instructions given.

The PIK Committee in the preface to Pattern Instructions for Kansas, Civil (1966) discussed and set forth the basic principles that were to serve as guides in the drafting of instructions. An important one of these principles is that jury instructions "should be stated in *brief, simple language,* language that would be *clear and understandable to laymen."* (p. x.) (Emphasis supplied.) This principle is equally applicable to criminal jury instructions.

The word "prurient" is neither simple, clear, nor understandable. It has sent hundreds of justices, judges, and lawyers to the unabridged dictionaries. The majority opinion cites quotation after quotation in deciphering it; courts have written interminably on the word since its use in *Roth,* 354 U.S. 476, in 1957.

The inclusion of the word "prurient" in a jury instruction necessitates the giving of additional instructions defining the term. This is confusing. There is no reason to use an obscure word in a definition, the purpose of which is clarification and explanation. "Prurient" is not a legal term. Not every word found in the opinions of the United States Supreme Court, or of this court, or contained in the statutes, are suitable for use in jury instructions. I suggest that "prurient," though clear and definitive to the scholar and the student of things obscene, is nebulous, unintelligible, and most unhelpful to the average juror.

I humbly suggest that the following instruction is clearer and more understandable than either the instructions given by the trial court or those approved by the majority of this court, and is just as accurate a statement of the law:

Any material or performance is "obscene" if the average person, applying contemporary community standards, would find all three of the following:

(1) that the principal theme of the material or performance, taken as a whole, tends to arouse lustful thought and sexual desire;

(2) that the material or performance has patently offensive representations of ultimate sexual acts, normal or perverted, actual or simulated; and

(3) that the material or performance, taken as a whole, lacks serious literary, educational, artistic, or scientific value.

I do not share the trepidation of the majority of the members of this court that commercial advertisements depicting pretty girls in bathing suits would subject the advertisers to criminal prosecutions for obscenity if the word "prurient" is deleted from jury instructions on "obscenity" and not repeated, paragraph after paragraph, page after page. The ordinary advertising with which I am familiar does not depict or portray "patently offensive representations . . . of ultimate sexual acts, normal or perverted . . . ." Soft drink and suntan ads are a far cry from motion pictures which depict with specificity the whole gamut of normal and perverted sexual acts, and little else. Prosecutors, judges, and juries know the difference.

I can see no logical reason for requiring our trial courts to use the word "prurient" in jury instructions defining obscenity.

We have not only missed an opportunity to clarify, but we have compounded the obfuscation which surrounds this almost mystical subject.

PRAGER and McFARLAND, JJ., join the foregoing dissenting opinion.